**AFFIRM as MODIFIED; and Opinion Filed February 21, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-01031-CR**
_____

**QUINCY RESHAWN GILSTRAP, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-75410**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Smith
Opinion by Justice Smith

A jury convicted appellant Quincy Reshawn Gilstrap of aggravated robbery, and the trial court assessed appellant's punishment at sixty years' confinement. In four issues, appellant challenges the sufficiency of the evidence to support his conviction and several of the trial court's evidentiary rulings. The State brings a cross-issue to correct an error in the trial court's judgment. We modify the judgment and affirm the judgment as modified.

**Factual and Procedural Background[1]**

At approximately 11 a.m. on February 27, 2021, a man wearing a face mask, dark hoodie, and yellow reflective vest entered a Metro by T-Mobile store on Mockingbird Lane in Dallas.  The man approached store manager Shanawaz Khoja, pointed a black revolver at Khoja, and ordered him to get on his knees.  The man then ordered Khoja into a back office and made him lie face down on the floor.  A second man, wearing a face mask, light gray Nike hoodie, and jeans with two distinctive holes in each leg, entered the store and emptied the cash register.  The second man then went into the back office, where he pulled out a black and silver semiautomatic handgun and pointed it at Khoja.  The men removed cellphones and a tablet from a safe and placed them into a black drawstring bag.  They ordered Khoja to wait by the store's rear exit until they left.

Surveillance footage showed a blue Ford Escape driving back and forth in front of the store for about thirty minutes before the robbery.  Dallas Police detectives, working on the FBI Violent Crimes Task Force, learned that the same vehicle had been captured on surveillance video at the scene of a similar robbery at a Metro by T-Mobile store in Garland on February 21, 2021.  Both robberies were committed in the daytime by two men wearing face masks and hoods.  In both robberies, one of the men (Suspect 1) wore a yellow reflective vest and entered the

---

[1] The factual background is derived from the testimony and evidence admitted at trial.

–2–

store first, followed a short time later by the other man (Suspect 2). Suspect 1 appeared to wear the same dark hoodie in both robberies. In each robbery, the store employee was taken to the back office and then ordered to wait in the rear of the store until the suspects had left. In each robbery, the suspects stole cell phones from the store's safe, and Suspect 2 took money from the cash register.

Searching license-plate records, detectives identified a 2011 Ford Escape matching the description of the vehicle seen on surveillance video at the Dallas and Garland robberies registered to appellant and his wife, Inderpreet Kaur. The last two numbers of that Escape's license plate matched a partial license-plate number seen on the Escape in the video from the Garland robbery. Police obtained a warrant to place a GPS tracking device on the Escape and, on February 28, a detective located the Escape at a North Dallas bar where the girlfriend of appellant's half-brother, Markeis Williams, worked. The detective followed the Escape to a Hyatt hotel in Garland, where he was able to place the tracker on the Escape.

Later that morning, an FBI agent conducting surveillance at the Hyatt saw a couple, whom he recognized from their driver license photos as appellant and Kaur, get into the Escape and drive to a convenience store. Surveillance cameras captured appellant getting out of the Escape and entering the store. He was wearing jeans that appeared to be identical to the distinctive jeans worn by Suspect 2 during the Dallas robbery.

Hotel records showed that appellant was staying at the Hyatt at the time of both robberies. Surveillance video from the Hyatt lobby on the morning of February 27 showed a man wearing the same shoes, hoodie, and distinctive jeans worn by Suspect 2 during the Dallas robbery. Video footage recorded approximately three hours after the robbery showed the same man entering the hotel with another man, who was wearing a dark hoodie that was consistent with the hoodie worn by Suspect 1 in the robbery. The second man was carrying a dark drawstring bag that resembled a drawstring bag used during the robbery. Hyatt surveillance video from February 21 showed a man leaving the hotel at around 11:20 a.m., wearing what appeared to be the same clothing Suspect 2 was wearing during the Garland robbery later that afternoon. From their investigation, detectives concluded that Williams and appellant were Suspects 1 and 2, respectively.

On March 4, appellant's Escape was tracked traveling from Kansas to Dallas. A Dallas Police fugitive officer later located the Escape near Williams's apartment in Dallas. The officer saw appellant and Kaur get out of the vehicle and go inside a convenience store. The next day, detectives discovered that someone had removed the tracking device from the Escape.

On March 10, arrest warrants were issued for appellant, Williams, and Kaur, and search warrants were issued for their residences and the Escape. Officers found the Escape parked in the garage of appellant's and Kaur's home in Wichita, Kansas. Inside the home, officers found clothing that matched the clothing worn by Suspect

–4–

2 during the Dallas and Garland robberies. Inside the Escape's trunk, officers found a yellow reflective vest that looked like the vest Suspect 1 wore in both robberies. The search of Williams's apartment yielded several more reflective vests, a pair of boots that appeared to be the same boots worn by Suspect 1 in the Garland robbery, and a .38 revolver that appeared to be the same revolver used by Suspect 1 in both robberies. The gun used by Suspect 2 was never found.

Police also seized cellphones belonging to appellant, Kaur, and Williams. Data extracted from Kaur's and Williams's phones showed that, approximately three hours before the Dallas robbery, Williams texted Kaur, "It's time to wake up and clock in." Shortly after the robbery, appellant texted Kaur that he had "[j]ust paid the phone bill," and, within the following thirty minutes, appellant texted Kaur: "Bout to check this bill it's a little high so we trying to get a refund"; "[W]e checking something out really quick . . . give me til bro come out of here and I'll let you know something"; and "Okay we price checking real quick." One of the lead detectives investigating the robbery testified that he believed appellant's texts referred to the robbery and "scouting another area."

Data obtained from Williams's cellphone showed that, while appellant was texting Kaur, Williams was Googling LG tablets and, more specifically, Metro by T-Mobile LG tablets. Williams also visited a website called IMEI.info, where he

looked up an IMEI number[2] that matched the IMEI number of a tablet stolen from the Dallas store. Later that afternoon, Williams Googled "metro pcs news dallas," "metro by mobile robberies," "metro by mobile robberies dallas," and "local robberies in Dallas." On March 5, the day the tracking device was removed from the Escape, Williams Googled "yorkie tracking device disguise," "gps device serial look up," "gps tracker disguise," "gps tracker covert," and "remote tracking device on my car."

Call detail and timing advance records also showed activity consistent with appellant's and Williams's cellphones being in the area of the Garland store at the time of the February 21 robbery and the Dallas store at the time of the February 27 robbery. Appellant's cellphone activity was consistent with his cellphone being in the vicinity of the Hyatt during the times Suspect 2 appeared on the Hyatt's surveillance video on February 21 and 27; Williams's cellphone activity was consistent with his cellphone being in the vicinity of the Hyatt on February 27 when Suspect 1 appeared on the surveillance video.

The State charged appellant by indictment with the February 27 aggravated robbery at the Dallas Metro by T-Mobile store. After hearing the evidence and argument of counsel, a jury found appellant guilty of the offense. Following a hearing, the trial court assessed punishment and, finding two enhancement

---

[2] An IMEI number is a unique 15-digit number used to identify a mobile device.

paragraphs in the indictment to be true, sentenced appellant to sixty years' confinement.

**Sufficiency of the Evidence**

In his first issue, appellant contends that the evidence is legally insufficient to show that he committed the offense of aggravated robbery. Specifically, he asserts there is insufficient evidence to identify him as the perpetrator of the offense.

When reviewing the legal sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The factfinder resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the [State] and therefore defer to that determination." *Murray*, 457 S.W.3d at 448–49.

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240

–7–

(Tex. Crim. App. 1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits aggravated robbery if, in the course of committing theft and with intent to obtain or maintain control of that property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. *Id.* § 31.03(a).

Contending that the evidence of his identity was insufficient, appellant directs the Court to the lack of eyewitness identification and fingerprint evidence and the fact that police never located Suspect 2's gun. The State, however, may prove identity "by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence." *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018) (citing *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009)). A lack of direct evidence is not dispositive of the issue of guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient." *Id.*

Here, the jury could reasonably infer from the evidence linking appellant to the robbery that he was Suspect 2. Someone was driving appellant's Escape back and forth in front of the Dallas Metro by T-Mobile store for about thirty minutes before the February 27, 2021 robbery, and a detective testified that she believed whoever was in the car was surveilling the store. Suspect 2 entered the store wearing the same Nike hoodie, distinctive jeans, and shoes that appellant was wearing when he left the Hyatt a few hours earlier. Appellant wore the same clothing when he returned to the Hyatt about three hours after the robbery with another man who was dressed like Suspect 1 and carrying a drawstring bag like the bag used during the robbery. Surveillance video showed that appellant also was wearing the same distinctive jeans the next day when he drove his Escape from the Hyatt to a convenience store. Police later found the Nike hoodie and jeans in appellant's house and a yellow vest like the vest Suspect 1 wore in the robbery in the Escape's trunk. Cellphone records placed appellant and Williams in the area of the Dallas Metro by T-Mobile store at the time of the robbery. Just after the robbery, Williams was researching Metro by T-Mobile LG tablets and the IMEI number of a tablet taken from the Dallas store and appellant was texting messages to Kaur that the jury reasonably could believe related to the robbery.

Viewing the evidence in the light most favorable to the State, we conclude that any rational factfinder could have found that appellant was Suspect 2 and was

–9–

guilty of aggravated robbery beyond a reasonable doubt. *See Murray*, 457 S.W.3d at 448; *Ingerson*, 559 S.W.3d at 509. We overrule appellant's first issue.

**Evidentiary Rulings**

In his second, third, and fourth issues, appellant challenges the trial court's rulings admitting (1) evidence of the February 21, 2021 robbery of the Garland Metro by T-Mobil store, (2) statements made by the Garland robbery victim recorded by a responding officer's body camera, and (3) photographs from a Facebook Marketplace listing for a blue 2011 Ford Escape.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement." *Casey*, 215 S.W.3d at 879. The erroneous admission of evidence generally constitutes non-constitutional error and is reviewed under Texas Rule of Appellate Procedure 44.2(b). *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Under Rule 44.2(b), we disregard any non-constitutional "error, defect, irregularity, or variance that does not affect [the defendant's] substantial rights." TEX. R. APP. P. 44.2(b).

1. *Garland Robbery*

In his second issue, appellant contends that admission of evidence related to the February 21, 2021 robbery of the Garland store violated Texas Rules of Evidence

404(b) and 403. Appellant asserts that (1) the evidence lacked relevance other than to show his bad character for associating with Williams, and (2) the probative value of the evidence was substantially outweighed by the risk of unfair prejudice to him.

Evidence of a "crime, wrong, or other act" is inadmissible to prove a person's character if it is relevant solely to show that the person acted on a particular occasion in accordance with the person's character. TEX. R. EVID. 404(b)(1); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Such evidence may be admissible, however, when it is relevant to a fact of consequence and is not offered to show character conformity. TEX. R. EVID. 404(b)(2) (evidence of other crimes, wrongs, or acts "may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident"); *Powell*, 63 S.W.3d at 438. Thus, a party may introduce evidence of an extraneous offense if the evidence "logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Id.*

Under Rule 403, even relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. TEX. R. EVID. 403; *Martin*, 173 S.W.3d at 465. "Unfair prejudice refers not to an

adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis, commonly an emotional one." *Casey*, 215 S.W.3d at 883. A Rule 403 analysis generally balances four non-exclusive factors: (1) the probative strength of the evidence; (2) the potential of the evidence to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019).

Before trial testimony began, the trial court held a hearing outside the jury's presence to determine the admissibility of evidence regarding the February 21 robbery at the Garland store and a January 24 robbery at another Metro by T-Mobile store in Richardson. Dallas Police Detective Stephen Prince testified that he was one of the detectives investigating a string of aggravated robberies committed between January 24 and March 8 or 9, 2021. Prince described how investigators had traced a Ford Escape seen at many of the robberies to appellant and Kaur and how that discovery and further investigation led police to identify appellant, Williams, and Kaur as suspects in the robberies. The State argued that evidence of the Garland and Richardson robberies was relevant and admissible to the issue of identity because there was no eyewitness who could identify appellant as a perpetrator of the Dallas robbery. Appellant argued that there were differences between the offenses, the State sought to show "guilt by association" by proving that Williams, appellant's half-brother, was involved in the robberies, and the evidence would be more

–12–

prejudicial than probative. The trial court ruled that only the Garland robbery, which shared more similar characteristics with the Dallas robbery, was admissible and, because of the shared characteristics, the evidence on the Garland robbery was more probative on the issue of identity than prejudicial.

A defendant's modus operandi is his "distinctive and idiosyncratic manner of committing criminal acts." *Casey*, 215 S.W.3d at 880–81. It is an exception to the general rule excluding extraneous-offense evidence if it tends to prove a material fact at issue, other than propensity. *Id.* Evidence of remarkably similar acts may be admissible to prove, among other things, identity. *See id.*; *Guo v. State*, No. 05-19-01178-CR, 2022 WL 224815, at *13 (Tex. App.—Dallas Jan. 26, 2022, pet. ref'd). "No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Guo*, 2022 WL 224815, at *13 (quoting *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008)).

Here, the record supports the trial court's ruling that the evidence of the Garland robbery was relevant modus operandi evidence. Both robberies took place at Metro by T-Mobile stores in Dallas County six days apart. Both robberies occurred during the day when only one employee and no customers were present. A Ford Escape linked to appellant was outside both stores before the robberies occurred. Both robberies were committed by two men who wore face masks and

–13–

hoods. In both robberies, (1) the suspect wearing a yellow reflective vest entered first, brandished a revolver, and was followed a short time later by a second suspect, (2) the second suspect removed money from the cash register, (3) the suspects forced the victim into the store's back office, where they took electronics from a safe, and (4) the suspects ordered the victim to wait in the rear of the store while they left.

Because the two robberies shared striking similarities, we conclude evidence related to the Garland robbery was relevant to appellant's modus operandi and identity and was not offered to show character conformity. *See Ransom v. State*, 503 S.W.2d 810, 813 (Tex. Crim. App. 1974) (offenses sufficiently similar when both offenses were robberies committed at gunpoint, defendant was aided by confederate, and offenses occurred in same area three days apart); *Poullard v. State*, 833 S.W.2d 273, 276–77 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (offenses sufficiently similar when both were robberies of jewelry and money from cash register committed with revolver in same geographic area, four days apart, against lone female victim working in small store). Accordingly, the trial court did not abuse its discretion when it determined that the evidence was admissible. *See* TEX. R. EVID. 404(b)(2).

We further conclude that the offenses' similarities support the trial court's determination that the probative value of the Garland robbery evidence was not substantially outweighed by the danger of unfair prejudice. The evidence was highly probative on the disputed issue of appellant's identity. Khoja was unable to identify

–14–

appellant, so the State had a strong need for the evidence to prove its case. Several witnesses testified about the Garland robbery because it and the Dallas robbery were subjects of the same investigation, but the evidence was neither excessive nor of the type that might lead the jury to make an irrational or emotional decision. Further, the trial court instructed the jury not to consider evidence regarding appellant's having committed an extraneous offense for any purpose unless it found beyond a reasonable doubt that appellant committed the extraneous offense and, even then, to consider the evidence only "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or state of mind of the defendant, if any, and for no other purpose." On this record, we conclude the trial court did not abuse its discretion in determining that the probative value of the evidence was not outweighed by a danger of unfair prejudice. *See, e.g.*, *Heigelmann v. State*, 362 S.W.3d 763, 772–73 (Tex. App.—Texarkana 2012, pet. ref'd) (evidence of extraneous robberies was not more prejudicial than probative where evidence was probative of identity due to similarities between offenses, identity was strongly contested, State lacked direct proof of identity, and trial court gave limiting instruction). We overrule appellant's second issue.

2.    *Statements on Body Camera Recording*

In his third issue, appellant contends the trial court erred in overruling his hearsay objection to statements by the Garland robbery victim that were recorded by a responding officer's body camera. Appellant asserts the evidence did not meet

the excited utterance exception to the hearsay rule because the statements were "simply a narrative of past acts or events" and "made in response to direct specific questions that were calculated to elicit the type of responses given."

Hearsay, a statement made outside of court and offered into evidence to prove the truth of the matter asserted, is generally inadmissible. TEX. R. EVID. 801(d). Hearsay is admissible under an exception for excited utterances when it "relat[es] to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* 803(2). "The exception is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information." *Apolinar v. State*, 155 S.W.3d 184, 186–87 (Tex. Crim. App. 2005). In considering whether a statement is an excited utterance, the trial court must determine whether the declarant was still dominated by the emotions, fear, excitement, or pain of the event at the time of the statement. *Id.*; *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003). Factors the court may consider include "the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving." *Apolinar*, 155 S.W.3d at 187.

Garland Police Officer Matthew Habecker testified that he was on patrol on February 21, 2021. He was wearing a body camera at the time. He received a call about the Garland robbery and arrived at the store "within a few minutes." He spoke with the victim, Prajwol Dahal, and described Dahal as excited, scared, and nervous.

–16–

Dahal spoke quickly during their encounter and needed to smoke a cigarette to calm himself. Habecker recalled asking Dahal questions, and Dahal answering. Appellant objected to the admission of Dahal's statements, but the trial court concluded the statements fell within the excited utterance exception and overruled the objection. The State published the body camera footage, and Habecker narrated. The footage shows Habecker making an initial contact with Dahal and then taking a few minutes to secure the area. Habecker then spoke with Dahal, who provided details about the robbery. Dahal was clearly upset.

The fact that several of Dahal's statements were in response to questions by Habecker was one of the factors for the trial court to consider in its excited utterance analysis. *See Zuliani*, 97 S.W.3d at 596. However, Habecker's testimony and the body camera footage showed that Dahal was in an agitated state and his statements, made very shortly after being robbed at gunpoint, were not self-serving. *See Apolinar*, 155 S.W.3d at 190–91; *White v. State*, No. 01-20-00238-CR, 2022 WL 2674214, at *7 (Tex. App.—Houston [1st Dist.] July 12, 2022, no pet.) (mem. op., not designated for publication) (no error in admitting body camera footage of witness statements responding to police questioning as excited utterances where officer described witness as emotional, sweating, and unable to stand still). Accordingly, we conclude the trial court did not abuse its discretion in finding that Dahal was still dominated by the emotions of the robbery when he made the statements and

–17–

overruling appellant's hearsay objection to Dahal's statements. We overrule appellant's third issue.

### 3. *Facebook Marketplace Listing*

In his fourth issue, appellant contends the trial court erred in admitting into evidence pages of a Facebook Marketplace listing for a blue 2011 Ford Escape. Detective Prince testified that, after obtaining a search warrant, he identified a Facebook Marketplace listing for a Ford Escape that he was able to link to Kaur. The State offered screenshots of the listing containing photographs of the interior and exterior of the vehicle, and appellant objected that a proper predicate had not been laid. The trial court overruled the objection.

Even assuming without deciding that it was error to admit the listing pages, we conclude the error was harmless. We disregard any error that does not affect a substantial right. *See* TEX. R. APP. P. 44.2(b). An error affects a substantial right when it has "a substantial and injurious effect or influence in determining the jury's verdict." *Gonzalez*, 544 S.W.3d at 373. If, after examining the record, we have fair assurance that the error did not influence the jury or had but a slight effect, the error did not affect the defendant's substantial rights. *Id.* Further, the erroneous admission of evidence is harmless error if other evidence proving the same facts is properly admitted elsewhere or comes in elsewhere without objection. *Sosa v. State*, No. 05-19-00868-CR, 2021 WL 1084639, at *4 (Tex. App.—Dallas Mar. 22, 2021, pet. ref'd) (mem. op., not designated for publication); *Matz v. State*, 21 S.W.3d 911,

912 (Tex. App.—Fort Worth 2000, pet. ref'd) ("It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence.").

The State proffered the Facebook Marketplace listing to link appellant and Kaur to the Ford Escape seen at both robberies. However, other properly admitted evidence, including vehicle-registration records, also established that link. Therefore, even assuming that it was error to admit the listing pages, the error was harmless and, having considered the entire record, we conclude that it did not affect a substantial right of appellant. *See* TEX. R. APP. P. 44.2(b); *Sosa*, 2021 WL 1084639, at *4. We overrule appellant's fourth issue.

## Modification of Judgment

In a cross-point, the State requests that we modify the trial court's judgment to show that appellant pleaded not guilty to the indictment and not true to the enhancement paragraphs. This Court has the power to modify incorrect judgments when the necessary data and information is available to do so. TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Here, the record shows that appellant pleaded "not guilty" to the indictment and "not true" to two enhancement paragraphs, but the trial court's judgment reflects that he pleaded "guilty" to the indictment and "true" to the enhancements. Accordingly, we sustain the State's cross-point and modify the trial court's judgment to accurately reflect that appellant entered a plea of not guilty to the aggravated robbery offense

–19–

and not true to the indictment's two enhancement paragraphs.  *See Asberry*, 813 S.W.2d at 529.

## Conclusion

We modify the trial court's judgment to reflect that appellant entered a plea of not guilty to the charged aggravated robbery offense and not true to the two enhancement paragraphs.  We affirm the judgment as modified.


/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
221031F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

QUINCY RESHAWN GILSTRAP,
Appellant

No. 05-22-01031-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-75410. Opinion delivered by Justice Smith. Justices Molberg and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The term "Guilty" is deleted and replaced by "Not Guilty" following the portion of the order that reads "Plea to Offense:" and the term "Pleaded True" is deleted and replaced by "Pleaded Not True" in the portions of the order that read "1st Enhancement Paragraph:" and "2nd Enhancement Paragraph:".

The trial court's judgment, as **MODIFIED**, is **AFFIRMED**.

Judgment entered this 21st day of February, 2024.